THE FIRST NATIONAL BANK OF STURGIS v. BENJ. C. BUCK AND CHAS. B. BUCK.

*Creditor's bill—Settlement—Reputation of wealth.*

1. A bill in aid of execution will not lie after the parties have settled a previous suit involving the same judgment and complainant has taken the benefit of such settlement, even though the defendant has not in some respects strictly fulfilled the terms of the agreement.

2. The fact that among his neighbors a man is reputed to be worth a stated sum does not prove that he is, nor is it admissible upon the issue of his making a fraudulent disposition of his property.

Appeal from St. Joseph. (Pealer, J.)  Jan. 6.—Apl. 22.

CREDITOR's bill.  Complainant appeals.  Affirmed.

*T. C. Carpenter* and *Jno. B. Shipman* for complainant.

*J. W. Flanders* and *Henry H. Riley* for defendants.

CHAMPLIN, J.  The bill of complaint in this case is filed in aid of certain executions at law levied upon judgments in favor of the bank against defendant Benjamin C. Buck.

The bill avers :  (1) The indebtedness of the defendant Benjamin C. Buck to Henry W. Richards on two promissory notes, dated July 24, 1874, given for $3000 each, due in three and four months after date, which notes were signed by Hiram Jacobs.  (2) Indebtedness also to complainant in the sum of $6000 on a note dated November 16, 1867, which note was also signed by E. G. Newhall and E. G. Bennett.  (3) In-

debtedness also to complainant on a note given for $1500, which note was also signed by Levant E. White.    (4) Indebtedness also to complainant on a note for $2028.69, signed also by Z. H. Wallace.    (5) Indebtedness also on a note for $3500, which note was also signed by S. Stow and Levant E. White.

Bill also avers other indebtedness of the said Benjamin C. Buck; that is:    (1) To the First National Bank of Constantine about $3100 ; (2) to the Farmers' Bank of Constantine, about $2500.

The bill then avers judgment on the H. W. Richards note about August 4, 1875, in the circuit court for the county of St. Joseph, for $7218.26, and costs, and issue of execution and levy made August 9, 1875, on certain lands of said Benjamin C. Buck, which lands are described in the bill.    Also avers sale of said lands so levied on, in parcels, to the said H. W. Richards on the 20th day of March, 1876, and issue of certificate of sale, etc., to him, and avers judgment in favor of the Farmers' National Bank of Constantine, against Richard Reed, Benjamin C. Buck, and Hiram Jacobs, October 28, 1875, for $2519, and costs.    Also judgment in favor of the First National Bank of Constantine, against Richard Reed, Benjamin C. Buck, and Hiram Jacobs, for $3155 and costs, rendered on January 28, 1876.    Avers issue of executions and levy on real estate above described, being the same lands upon which Richards' execution was levied.    Avers judgment on a note of $5000, before mentioned, against Benjamin C. Buck, Eli G. Bennett, and Elbridge G. Newhall, in the circuit court for the county of St. Joseph, about March 19, 1874, for $6657 and costs, which was affirmed by the Supreme Court, and judgment there rendered for $6700 and $200 costs.    Avers issue of execution out of Supreme Court about May 12, 1876, and levy on real estate above alluded to, and also five-eighths second and third stories of brick block, —block 39,—all in village of Sturgis, known as "Union Hall."    Avers judgments on the aforesaid described three notes of $1500, $2028.69, and $3500 in said court, on the 23d day of October, 1877.    Another in favor of complainant,

against Benjamin C. Buck and Levant E. White, for $1595.90, and costs. Also one against Benjamin C. Buck, Silas Stow, and Levant E. White for $3539.17, and costs. And against B. C. Buck and Z. H. Wallace for $2068.50, and costs. Also avers issue of executions and levy, "among other things, upon the lands and premises above described," and avers they are unpaid.

The judgments upon which the bill is based, were rendered as follows: In the Supreme Court of the State of Michigan, at the April term, 1876, for $6700 damages and costs of suit, and judgment rendered October 23, 1877, for $2068.50, and one for $3539.17, and costs. Avers that B. C. Buck's real estate was worth $20,000. Avers said B. C. Buck owned $2000 in stock in the First National Bank of Sturgis, also other personal property to amount of $10,000. Avers conveyance on the first of March, 1876, of a portion of said real estate to Levant E. White, being five-eighths of Union Hall. Avers an assignment of the said $2000 bank stock by B. C. Buck to Charles B. Buck, his son, about March 30, 1876. Avers mortgage executed by B. C. and Hannah Buck to C. B. Buck for $3800, without consideration, etc., and about the said time transferred to him, and other persons unknown, all his available personal property. Avers assignment of one-half to C. B. Buck of certain judgments in the United States court, Western district, Michigan, in favor of R. Reed & Son, against certain insurance companies, the proceeds of which, it is alleged, belonged to Benjamin C. Buck and Hiram Jacobs. That all these transfers and conveyances were made with intent to hinder, delay and defraud the creditors of B. C. Buck. Avers that said real estate, bid in by H. W. Richards on his levy and sale on judgment against B. C. Buck and Hiram Jacobs was not redeemed, and that the executions in favor of the First National Bank of Constantine, Farmers' National Bank of Constantine, and Henry W. Richards were assigned to Charles B. Buck, and that the considerations therefor were paid by Benjamin C. Buck. Avers that on the 24th day of March, 1877, the sheriff of St. Joseph county delivered a deed of all said real estate covered

by said executions to C. B. Buck. Avers that said deeds, assignments, executions, certificates of sale, mortgages, etc., are clouds on the title of said B. C. Buck, and stand in the way of complainant's execution, etc., and asks that they be declared fraudulent and void, and that the moneys and property paid by B. C. Buck to said Farmers' National Bank of Constantine, and said First National Bank of Constantine, and to H. W. Richards, in consideration of said assignments to said C. B. Buck, be decreed to operate as payment and redemption by said B. C. Buck of said lands from said liens and incumbrances, etc., and that said mortgage from B. C. to C. B. Buck of $3800 be canceled and delivered up, etc.

Benjamin C. Buck puts in a separate answer in substance as follows:

(1) Admits execution of notes set forth in bill and judgments rendered thereon. In regard to a note executed by himself, E. G. Newhall and E. G. Bennett to complainant he avers the following guaranty:

"STURGIS, November 18, 1867.

For value received I hereby guaranty Benjamin C. Buck against all loss or liability by reason of signing a note with E. G. Bennett for five thousand dollars, discounted at the First National Bank of Sturgis, dated November 17, 1867, and due ninety days from date.      RICHARD REED."

The answer then sets up the following compromise, claimed to have been made between the defendants and complainant of the matters accrued, being the same averred in a bill filed by them on or about the 17th of August, 1877.

And the defendant further answers and says that on or about the 17th day of August, 1877, the complainant filed a bill in this Court setting up, stating and charging in the same manner and form, substantially, the same facts and causes for relief as now charged in the bill of complaint filed in this case, and the said complainant came to a full adjustment of the matters and things therein stated, and receipted to defendant in full for any liability against him in relation to the Bennett note and judgment wrongfully obtained against this defendant, and received from him an assignment of the judg-

ment obtained by him against Richard Reed for $5030.35 in full accord and satisfaction of the liability of said defendant in relation thereto. That no proceedings were had in said suit beyond the pleadings duly filed in this Court, and this defendant avers that all matters and things stated or charged in said bill of complaint were fully answered and abandoned or settled by complainant, and to which defendant prays leave to refer when produced as a part of the files of this Court.

And this defendant further answers and says that on or about the 17th day of August, 1877, complainant filed bill of complaint in this Court covering the same matters and things charged in the bill of complaint filed in this cause; that this defendant and others answered said bill of complaint, and subsequently assigned to complainant the judgment hereinbefore mentioned, and the said L. E. White conveyed said Union Hall to complainant, and the said Charles B. Buck assigned the judgment obtained by the Farmers' National Bank of Constantine, against this defendant and others, to complainant, and thereupon and by reason thereof said complainant abandoned his said suit in this Court, and admitted the answer filed in said cause to be true, and which was true in fact, as this defendant will maintain and prove, and all of which fully appears by the files in said cause, to which, when produced, defendant asks leave to refer.

(3) Avers his business proved a failure; that all his real estate was levied on, advertised and sold upon the Richards execution, and that he was unable to redeem.

(4) That he took no steps or measures to prevent his creditors from taking all his property, and applying the same in the payment of his debts.

(5) That when he stopped payment his available means were exhausted, and he had been compelled to relinquish his live-stock business for want of ready means to conduct the same.

(6) Avers an agreement made with complainant to prosecute the claim he and Newhall had against Reed on said guaranty, in consideration of which complainant agreed to release and discharge this defendant from further liability on

said judgment, which he did, and assigned the judgment to complainant.

(7) That all of his property had been taken by his creditors to pay his debts; and complainant well knew that the same was being sold at a great sacrifice, and suffered the same to be done, and well knew the inability of the defendant to redeem the same or pay said indebtedness.

(8) That the stock of the complainant bank was assigned to C. B. Buck for a valuable consideration, and without any intent to defraud, etc. That the same was assigned by C. B. Buck to the Farmers' National Bank of Constantine, in consideration of an assignment to him of the judgment of said bank against this defendant and others mentioned in said bill, and said complainant purchased said judgment from the said C. B. Buck and received from him an assignment thereof, well knowing his title thereto was good and valid, and complainant enforced said judgment in the name of said C. B. Buck, and thereby ratified and confirmed the sale, etc.

(9) That the interest in Union Hall was conveyed to Levant E. White for a valuable consideration, and with no intent to defraud; that White was the indorser of this defendant, and said complainant afterwards accepted the title of the same from White, well knowing the same to be good and valid in said White, and thereby confirmed the sale; and afterwards said complainant sold and conveyed the same property to the First National Bank of Constantine for a valuable consideration.

(10) That he turned over to complainant a judgment against the Monticello Oil & Oil Land Company, rendered August 8, 1878, for the sum of $925, and applied it on the note executed by this defendant and the said Zebina H. Wallace.

(11) That the said Zebina H. Wallace turned over to the said complainant another judgment against said Oil Company for the sum of $1347, the same to be collected by the complainant, and the proceeds applied in payment of said note.

(12) That said judgments were collectible, good and valid,

and have ever since been under the control of complainant and its attorney.

(13) That the insurance claims were of no value; that Hiram Jacobs was surety with this defendant upon obligations out of which said insurance arose; that he was obliged to assign the same to raise funds to prosecute the same; that the whole amount was applied in payment of obligations of the said L. L. Moore, out of whose claims against one Richard Reed said insurance arose, except costs and expenses; and an amount is now in hands of complainant's solicitor, belonging to C. B. Buck and Hiram Jacobs, etc.

(14) That the mortgage executed by Benjamin C. to Charles B. Buck was made and delivered for a valuable consideration.

(15) That there was no intent by defendant to defraud his creditors in any of said sales, assignments, or conveyances, but all were made in good faith.

(16) And he prays to be hence dismissed, etc.

C. B. Buck answers and says, in substance:

(1) That he purchased the certificates of sale mentioned in the bill of H. W. Richards with his own money and not with the money of B. C. Buck, and denies that B. C. Buck had any interest or claim thereto in any manner whatever, either directly or indirectly.

(2) That he purchased the bank stock in good faith, and paid his own money therefor to B. C. Buck, and denies any fraud or secret interest of B. C. Buck.

(3) That he has not purchased any personal property, credits, choses or rights in action from the said B. C. Buck without actual payment therefor and for a valuable consideration.

(4) That the mortgage described in the bill was taken for money before that time advanced by him to B. C. Buck, and was done in good faith, etc., without any intent to defraud creditors.

(5) Was a bona fide purchaser of said bank stock, certificates of sale, mortgage, and choses in action, and denies that

he holds the same against the just rights of the creditors of said B. C. Buck.

(6) The defendant then answers:

And this defendant further answers and shows unto the court that the complainant, on or about the 17th day of August, 1877, filed his bill of complaint against this defendant and others, charging substantially the same matters and things as charged in this suit. That the defendants filed their joint and several answers to said bill of complaint, and that all the matters touching this defendant were fully adjusted between complainant and this defendant, and in pursuance of an understanding by and between the parties, complainant abandoned the suit then pending. And this defendant has since that time, and prior to the filing of the present bill, sold, mortgaged and otherwise disposed of nearly all the property to which this defendant obtained title by virtue of the sheriff's sale upon execution issued upon the judgment of *Henry W. Richards v. Benjamin C. Buck and Hiram Jacobs*, and the said purchasers and mortgagees have acquired their title thereto and liens thereon with the full knowledge and consent of complainant. All of which this defendant will maintain and prove.

And this defendant further answers and says that this second bill filed by complainant was instigated and set on foot by some evil-disposed person or persons for the purpose of annoying and vexing the defendant, and is wholly unfounded both at law and equity, as defendant is willing and now ready to aver, maintain and prove. And this defendant asks that he shall have the same benefit of his defense as if he had demurred to complainant's bill, and he denies all and all manner of unlawful combination and confederacy wherewith he is or may be by the said bill charged, all of which matters and things this defendant is now ready to aver, maintain and prove, as this honorable court shall direct, and prays to be hence dismissed with his reasonable costs and charges in this behalf most wrongfully sustained.

The bill of complaint waived an answer on oath, and the answers of defendant were not sworn to. The proofs show that some time in August, 1877, the complainant filed a bill of complaint in the circuit court for the county of St. Joseph, in chancery, alleging therein it was a judgment creditor of defendant Benjamin C. Buck; the judgment being the one

rendered in the Supreme Court of the State of Michigan, and also set forth in the present bill of complaint. The judgments and levies of the two banks at Constantine, and of Richards, and the sale thereunder, are fully set up; and the conveyances by B. C. Buck to White, and to his son, C. B. Buck, and the same allegations of fraud with respect thereto, are common to both bills. In fact, the latter bill is substantially a copy of the former, with the exception that two additional judgments and levies thereunder are added in the latter bill. Under the judgment set forth in the first bill, a levy was made upon the undivided five-eighths of the second and third stories of a brick block known as "Union Hall." This property, it was alleged, had been conveyed by defendant B. C. Buck to a Mr. White, with intent to defeat, delay and defraud the creditors of Buck, and particularly the complainant. In November following the filing of that bill, levies were made upon the three judgments obtained by complainant on the 23d of October preceding, upon Buck's interest in Union Hall. While these levies were pending, an agreement was entered into between complainant and the defendants, by which the undivided five-eighths of Union Hall was conveyed to William Allman in trust for complainant. Concerning this transfer Mr. Allman testifies : "We received a quitclaim deed from Mr. White of his interest in Union Hall, upon condition, if anything was realized out of it, we were to give Mr. Buck credit for it."

It further appears by the proofs that the First National Bank of Constantine, after this deed to Allman had been placed upon record, filed a bill against the First National Bank of Sturgis to compel it to relinquish any interest it acquired by virtue of that deed, which suit was settled by Allman deeding the undivided five-eighths of Union Hall to the First National Bank of Constantine. In reference to this matter, Mr. Allman, who was president of the First National Bank of Sturgis at the time these transactions occurred, testifies : "The First National Bank of Constantine commenced proceedings to set aside the title, and by an arrangement by the parties they relinquished their claim against the Jacobs

land, and we released our interest in Union Hall. Their levy preceded Mr. Buck's deed to Mr. White, and we made a quit-claim accordingly, or a release of some kind."

The Jacobs land referred to was land that was levied upon by the Constantine bank, and on which complainant had a subsequent levy. No complaint has ever been made of this transaction, or that it did not inure to the benefit of complainant; and yet in less than two years thereafter the complainant files his bill charging that the sale of the Union Hall property by Buck to White was intended to defraud it, and praying that this, among other transfers of property, be declared fraudulent and void, and of no effect as against complainant. This cannot be done. If there was fraud, complainant has not only acquiesced in the fraud, but has partaken of its fruits.

I have no doubt from the proofs that there was an agreement made for the settlement of the suit in chancery first brought, and of the indebtedness from Buck to the bank. The particulars of that agreement it is unnecessary to mention. Money was paid, property conveyed and obligations assumed in reliance upon it, and in carrying it out. That it has not been entirely fulfilled by the defendants, affords no justifiable basis for disregarding its terms, and furnishes no rights for reviving in this manner the controversy which was regarded as settled at that time. But upon the main point upon which the equities of the bill rest, the complainant's proofs fail to show that the several transfers alleged to have been made with intent to defraud the creditors of Benjamin C. Buck were made with such intent. Nor do I consider that it has maintained the allegations of its bill that the money or means used to buy the Richards judgment and execution sale and those of the banks at Constantine, were furnished by defendant Benjamin C. Buck. The purchase of those judgments or certificates of sales was perfectly legitimate, and there is no testimony which tends to show that defendant Benjamin C. furnished the money to make such purchase. The sale under the Richards execution was by public vendue, and it is to be presumed that the lands brought their fair

market value. If they did not, complainant's claim of $7000 and over had ripened into a judgment, and the land was subject to its levy before the time for creditors to redeem had expired; and if the lands were sold for less than their value, the way was open to complainant to levy and redeem. Its failure to do so makes it pretty evident that there was no margin for creditors over the price paid by C. B. Buck at the sale.

Twenty shares of the capital stock of the First National Bank of Sturgis were assigned by Benjamin C. Buck to Charles B. Buck, on the 30th of March, 1876. It is alleged that this assignment was without consideration. The only evidence upon this question is given by Benjamin C. and Charles B. Buck. The latter testifies that these shares were turned out to him for security on matters he was holden for his father; that he was security for enough to amount to all they were worth. He turned this bank stock over to Mr. Milo Powell, at the request of the Farmers' Bank of Constantine, for their certificate of sale of the Jacobs lands, and paid four hundred dollars additional of his own money. He afterwards transferred the certificate received from the bank to complainant in payment of the White and Buck judgment and Jacobs' note; the bank paying him the difference of something like four hundred dollars. This was done in pursuance of the agreement made to settle the former chancery suit. So here it again appears that the complainant received the fruits of what it claims to have been a fraudulent transaction in the purchase of the certificate of sale from the Farmers' Bank of Constantine.

The fact of the execution of the $3800 mortgage is satisfactorily explained in the evidence. It was executed for the purpose of enabling Charles B. Buck to raise money to pay off the Richards indebtedness and others that were then pressing. But he found that he was unable to raise money in that way.

It is claimed by complainant that at the time of these transfers Benjamin C. Buck was worth property to the amount of twenty to thirty thousand dollars, and it seeks to establish

this fact by proof that Buck was reputed to be worth that amount in the village where he lived. It is hardly necessary to remark that such testimony does not establish the fact nor tend to prove that Buck made a fraudulent disposition of any of his property.

The case alleged in the bill is not sustained by the proofs, and the decree of the circuit court dismissing complainant's bill is

Affirmed with costs.

The other Justices concurred.